**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit
**FILED**
June 9, 2017
Lyle W. Cayce
Clerk

No. 16-50976

CF INDUSTRIES, INCORPORATED; CF INDUSTRIES SALES, L.L.C.,

    Plaintiffs–Appellants,

v.

DEPARTMENT OF JUSTICE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,

    Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:14-CV-392

Before CLEMENT, PRADO, and OWEN, Circuit Judges.

PER CURIAM:\*

    CF Industries, Inc. and CF Industries Sales, L.L.C. (collectively, CFI) have been sued for damages in state court where it has been alleged that they are responsible for the fire and massive explosion at the West Fertilizer facility that caused the death of fifteen people, injuries to scores more, and widespread property damage. The Department of Justice Bureau of Alcohol, Tobacco,

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Firearms, and Explosives (ATF) has investigated the fire and explosion extensively, and CFI submitted a request to ATF for information and evidence. ATF denied that request, and CFI filed suit. The district court granted summary judgment in favor of ATF. CFI appealed. We affirm.

## I

On April 17, 2013, a fire followed by a large explosion occurred at the West Fertilizer facility in West, Texas, resulting in the deaths of fifteen individuals, injuries to more than 160 people, and significant property damage in the surrounding area. ATF conducted one of its largest fire investigations to determine the cause of the fire and explosion. Meanwhile, individuals and businesses harmed by the incident brought suit against CFI and other defendants in Texas state court, seeking tens of millions of dollars in damages from CFI and alleging that the ammonium nitrate manufactured by CFI and transported to the West Fertilizer facility was defectively designed and unreasonably dangerous, and that it caused the fire. CFI maintains it is not liable and has put forth alternative causation theories, including a theory that a "John Doe" criminal actor is responsible for the fire and, therefore, that the state court plaintiffs cannot prove CFI's conduct or its product was the proximate cause of their damages, a necessary element of their claims.

CFI sent a formal written request, known as a *Touhy*[1] request, pursuant to federal regulations[2] to the U.S. Attorney for the Western District of Texas, seeking evidence related to the West incident. ATF denied the request, responding that ATF "still has an open investigation" and that disclosure would "reveal investigatory records compiled for law enforcement purposes and would interfere with any potential enforcement proceedings." CFI then filed a

---

[1] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).
[2] 28 C.F.R. §§ 16.21-.29.

complaint in the Western District of Texas, seeking a declaratory judgment that ATF's denial of CFI's *Touhy* request was improper and an order compelling ATF to produce the requested evidence. ATF filed a motion to dismiss or, in the alternative, a motion for summary judgment, again asserting that the investigation was ongoing and that the release of evidence to CFI "could reveal law enforcement techniques, procedures, protocols, [and] methods as well as . . . any potential targets of criminal wrongdoing."

Prior to ruling on the matter, the district court scheduled an *in camera* hearing to view the investigation materials. ATF submitted materials to the district court ex parte before the hearing, including materials which provided additional detail as to why ATF contended that disclosure to CFI was inappropriate at that time. The district court canceled the *in camera* hearing and stayed the case until the investigation and reports were completed. The district court also ordered ATF to submit monthly status reports until the final investigation report was submitted to the court.

For almost a year, ATF provided monthly status reports to the district court ex parte. During this period, CFI also narrowed its *Touhy* requests to ATF. In response, ATF provided information in response to four of the five requests, releasing measurements of the explosion crater, photographs of the crater before any excavation occurred, a voicemail from a plant employee, and copies of documents recovered from the scene. ATF denied CFI's request for a "log of all items" ATF had recovered, asserting its law enforcement privilege.

Approximately three years after the explosion, ATF held a press conference and publicly announced that the final ruling as to the cause of the fire was that it was incendiary, meaning that the cause of the fire was a criminal act. ATF explained in the press conference that it reached this conclusion by conducting more than "400 interviews, a systematic fire scene examination, considering witness observations, viewing both witness

3

photographs and video as well as extensive scientific testing" at the ATF fire research laboratory. ATF also stated that the investigation was still "active and ongoing."

The federal district court subsequently lifted its prior stay, and CFI filed a motion to reset the previously scheduled *in camera* hearing. ATF again filed an ex parte, *in camera* court advisory, explaining that the investigation report was in the final approval process and would be hand-delivered to the district court. ATF also submitted a declaration by Special Agent Elder reiterating its reasons for nondisclosure. Although never placed on the district court's docket or included in the initial record on appeal, ATF did in fact hand-deliver the final report to the district court. ATF asserts that the district court reviewed the report and "*sua sponte* returned the report to the custody of ATF." The district court granted ATF's motion for summary judgment. CFI appealed.

This court heard oral argument and, at its conclusion, suggested that the parties further negotiate: CFI was to submit specific, limited evidence requests to ATF, and ATF was to reply with the production or specific reasons for refusing. In making its requests, CFI reiterated that it needed to "determine the cause and origin of the fire and the mechanisms that led to the explosion" to defend against the state civil claims. CFI also explained that "[b]ecause [ATF] had exclusive access to all relevant physical evidence and information recovered from the site[,] . . . CFI seeks [ATF's] cooperation in providing access to the necessary evidence and information, either in its original form or as summarized or depicted by [ATF]."

In response to CFI's requests, ATF produced a partially redacted version of its final investigative report and granted CFI's requests for a variety of evidence, including an evidence list and a debris field map, laboratory analyses of samples collected from the site, results of other testing and analysis included in the final report, the summary of a witness statement describing the facility,

4

a report on the electrical systems, additional information regarding the crater, a log of all photographs taken at the scene, summaries of all witness accounts included in the final report, and interviews of other witnesses not included in the report.  The final report, produced with partial redactions, included analysis of possible accidental, natural, and intentional causes of the fire.  It eliminated a number of possible causes, including the storage of ammonium nitrate and the spontaneous ignition of the ammonium nitrate.  The report specifically noted that "the Ammonium Nitrate was stored in the Ammonium Nitrate Bin(s) located on the northwest and west side of the structure, which is outside the area of origin of this fire."  Rather, the report concluded that "[t]he fire migrated to the Ammonium Nitrate storage areas from the Seed Room."

ATF also provided CFI the declaration of Gary Orchowski, Assistant Special Agent in Charge of ATF's Houston Division, which responded to a number of CFI's "requests for admissions."  Specifically, Special Agent Orchowski declared that (1) "ATF followed the standards set forth in the National Fire Protection Association's Guide for Fire and Explosion Investigations (NFPA-921) in conducting its investigation of the origin and cause of the event"; (2) based on available information, inspection of the physical evidence, consideration of witness observations, photographs and videos, and testing, "ATF has concluded that the fire was incendiary in nature, meaning that it was the result of a criminal act"; (3) other "reasonable accidental and natural fire scenarios" were considered and eliminated as causes; (4) "[t]he only hypothesis that could not be eliminated, and that was confirmed by extensive testing[,] . . . is that the cause of the fire was the result of human intervention by the application of a competent ignition source to available combustible materials in the area of origin"; (5) "evidence gathered by ATF is consistent with the presence of one or more criminal actors at the

5

scene at or just before the time the fire began"; and (6) "[t]here is no evidence that the ammonium nitrate was involved with the origin or cause of the fire."

At a later date, ATF produced five DVD discs of audio and video files as well as video recordings of field testing performed at the West facility. It also provided CFI with LIDAR surveying data pertaining to the West facility. In a third production, ATF produced a number of videos of experiments performed during the course of the investigation. Some of those test videos were partially redacted. ATF also provided CFI with additional reports of interviews with first responders, additional photographs, and other additional reports of witness interviews.

This court has not issued an opinion pending the many months of discussions between CFI and ATF. However, according to CFI, the parties have "reached an impasse," and CFI now requests that this court determine whether ATF may continue to withhold certain evidence.

## II

Judicial review of ATF's decision is governed by the Administrative Procedure Act (APA).[3] Although the "reviewing court shall decide all relevant questions of law," an agency decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[4] "The scope of review under this standard is narrow, and a court is not to substitute its judgment for that of the agency."[5] "Nevertheless, the agency

---

[3] 5 U.S.C. § 706; *see Hasie v. Office of the Comptroller of the Currency*, 633 F.3d 361, 365 (5th Cir. 2011); *see also COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) ("[I]n the context of an agency's response to a third-party subpoena, 'the proper method for judicial review of the agency's final decision pursuant to its regulations is through the Administrative Procedure Act.'" (quoting *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999))).

[4] 5 U.S.C. § 706.

[5] *Hasie*, 633 F.3d at 365.

6

must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[6] We review the district court's grant of summary judgment de novo.[7]

### III

Federal agencies are permitted to promulgate regulations, known as *Touhy* regulations, governing the disclosure of information pursuant to a request.[8] The Department of Justice's regulations, set forth at 28 C.F.R. § 16.21 *et seq.*, prohibit disclosures that "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired."[9] Section 16.26(a) also directs Department of Justice officials to consider "[w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose" and "[w]hether disclosure is appropriate under the relevant substantive law concerning privilege."[10]

The Department of Justice's regulations direct officials to consider the "substantive law concerning privilege,"[11] and ATF asserts that the law enforcement privilege applies to the withheld evidence such that nondisclosure was proper. The scope of the law enforcement privilege, which "protect[s] investigative files in an ongoing criminal investigation,"[12] is similar to the

---

[6] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).
[7] *Hasie*, 633 F.3d at 365.
[8] *See* 5 U.S.C. § 301; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).
[9] 28 C.F.R. § 16.26(b)(5).
[10] § 16.26(a).
[11] 28 C.F.R. §16.26(a)(2).
[12] *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 (2006) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)).

7

language in § 16.26(b)(5) of the Department of Justice's *Touhy* regulations. CFI asserts that, because ATF is the party asserting the law enforcement privilege, it bears the burden of demonstrating that the privilege applies. If this burden is satisfied, CFI contends, the privilege can nevertheless be overcome if CFI can show that its need outweighs ATF's interest in nondisclosure, according to a number of factors. But courts assessing the law enforcement privilege according to the framework urged by CFI have done so in suits that were not brought under the APA and therefore not subject to the deferential standard that statute requires.[13] We decline to apply the framework urged by CFI to this APA action. Rather, we assess ATF's decision as an agency action reviewed under the APA.

The record reflects that ATF recognized and considered the applicable *Touhy* regulations in making its decision. In response to CFI's recent requests for information it disclosed a significant amount of investigative material and, in denying certain requests, it articulated its reasons for doing so. ATF explained that (1) "the release of some material requested would, in the agency's considered judgment, cause undue risk of harm to law enforcement proceedings" and (2) compliance "would require excessive diversion of agency resources away from ATF's law enforcement mission, or [would be] unduly burdensome or cumulative." We cannot conclude that ATF's decision to withhold certain evidence because disclosure would harm or otherwise

---

[13] *See U.S. Dep't of Homeland Sec.*, 459 F.3d at 570 (directing the district court on remand to consider, when reviewing a motion to compel in pretrial discovery, the ten factors articulated in *Frankenhouser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. Mar. 13, 1973), in balancing the government's interest in confidentiality against the litigant's need for the documents); *see also Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998) (noting that when a private litigant requests disclosure under the Freedom of Information Act (FOIA), the federal agency "bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption").

interfere with law enforcements efforts was irrational, arbitrary, capricious, or an abuse of discretion.

We recognize that assertions of the law enforcement privilege by federal agencies may, in certain circumstances, make it difficult for private litigants to defend themselves in civil actions. We note, however, that in this particular case, ATF has provided CFI with a substantial amount of information, abandoning its prior blanket denial of CFI's *Touhy* requests.

*   *   *

For the foregoing reasons, we AFFIRM the judgment of the district court.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 16-50976
_____

D.C. Docket No. 6:14-CV-392

United States Court of Appeals
Fifth Circuit
**FILED**
June 9, 2017

Lyle W. Cayce
Clerk

CF INDUSTRIES, INCORPORATED; CF INDUSTRIES SALES, L.L.C.,

    Plaintiffs - Appellants

v.

DEPARTMENT OF JUSTICE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,

    Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Waco

Before CLEMENT, PRADO, and OWEN, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiffs-appellants pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.



**Certified as a true copy and issued
as the mandate on Aug 01, 2017**

**Attest:**
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

August 01, 2017

Ms. Jeannette Clack
Western District of Texas, Waco
United States District Court
800 Franklin Avenue
Waco, TX 76701

    No. 16-50976    CF Industries, Inc., et al v. DOJ Bur of Alcohol Tobacco
                           USDC No. 6:14-CV-392

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                      Sincerely,

                      LYLE W. CAYCE, Clerk

                      By: _____
                      Renee S. McDonough, Deputy Clerk
                      504-310-7673

cc:
    Mrs. Heather A. Lohman
    Mr. John Francis Paniszczyn
    Mr. Thomas Gary Pulham
    Ms. Noelle M. Reed